IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| Samuel Harmon, #328335, | ) | C/A No. 5:15-1620-HMH-KDW |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | |
| | ) | REPORT AND RECOMMENDATION |
| | ) | |
| Robert Stevenson, | ) | |
| | ) | |
| Respondent. | ) | |
| ———————————————— | ) | |

Petitioner Samuel Harmon ("Petitioner") is a state prisoner who filed this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. This matter is before the court pursuant to 28 U.S.C. § 636(b)(1)(B), and Local Civil Rule 73.02(B)(2)(c) DSC, for a Report and Recommendation on Respondent's Return and Motion for Summary Judgment. ECF Nos. 8, 9. Petitioner is represented by counsel in this habeas action. On July 27, 2015, Petitioner filed a Response in Opposition to Respondent's Motion for Summary Judgment. ECF No. 13, and Respondent filed a Reply on August 6, 2015. Having carefully considered the parties' submissions and the record in this case, the undersigned recommends that Respondent's Motion for Summary Judgment, ECF No. 9, be granted.

I.    Background

Petitioner is currently incarcerated in the South Carolina Department of Corrections ("SCDC"). ECF No. 1 at 1. In 2007, Petitioner was indicted at the April term of the Lexington County Grand Jury for possession of firearm or knife during commission of violent crime (2007-GS-32-1440), murder (2007-GS-32-1442), assault with intent to kill ("AWIK") (2007-GS-32-

1443), and assault and battery with intent to kill ("ABWIK") (2007-GS-32-1444). ECF No. 8-4.

Wayne Floyd, Esquire, represented Petitioner in a jury trial that convened from May 5-7, 2008,

and Solicitor Donnie Myers and Assistant Solicitor Angela Garrick represented the State. App.

1.[1] Petitioner was tried before the Honorable R. Ferrell Cothran. *Id.* After the trial, the jury found

Petitioner guilty as indicted. App. 562. Judge Cothran sentenced Petitioner to life imprisonment

for the murder conviction, 15 years for the ABWIK conviction, 10 years for the AWIK

conviction, and five years for the possession of a weapon during the commission of a violent

crime conviction. App. 573-74. The trial court ordered that the sentences run concurrent. App.

574. After his jury trial, Petitioner moved to have his sentences reconsidered, but his Motion was

denied. ECF No. 8-13.

Chief Appellate Defender Robert M. Dudek represented Petitioner on direct appeal. App.

576-96. In his appellate brief, Petitioner raised the following two issues:

1. Whether court erred by admitting the statement of co-defendant George Mack where Mack did not testify, since the statement was inadmissible hearsay?

2. Whether it was abuse of discretion to essentially require appellant to concede that Mack's hearsay statement was admissible in return for the jury hearing the public record of co-defendant Mack's conviction for a lesser offense and his sentence under Rule 803(8), SCRE, since the judge had already ruled this public record was inadmissible, and since this placed appellant in an untenable unfair position?

App. 579. Assistant Attorney General Alphonso Simon Jr., filed a brief on behalf of the State.

ECF No. 8-6. The South Carolina Court of Appeals affirmed Petitioner's conviction and

sentence in an unpublished opinion filed February 24, 2011. App. 639-40. There, the court found

Petitioner conceded to the admission of the statement, and he was bound by his trial stipulation.

App. 640. Concerning issue two, the court held that Petitioner's concession to the admission of

---

[1] Citations to "App." refer to the Petitioner's trial transcript, appeal from his sentence and conviction, and his claim for collateral relief in the state courts of South Carolina. That appendix is available at ECF Nos. 8-1 through 8-3 in this habeas matter.

the statement waives his direct appeal rights. App. 640. Furthermore, with regards to issue two, the court found the issue was not raised to the trial court and was not preserved for appellate review. App. 640. After the appellate court issued its opinion, Attorney Dudek filed a Petition for Rehearing on Petitioner's behalf. App. 641-649. The court of appeals denied the Petition on April 21, 2011, App. 650-51, and on May 27, 2011, the court issued a Remittitur. App. 652.

II.     Procedural History

Petitioner filed an application for Post-Conviction Relief ("PCR") on August 4, 2011, (2011-CP-32-2954). App. 653-60. In his application, Petitioner alleged he received ineffective assistance of trial counsel and ineffective assistance of appellate counsel for counsel's "failure to prepare and investigate;" "failure to interview and call witnesses;" and "failure to present a viable defense." App. 655. Assistant Attorney General Kaelon E. May filed a Return on behalf of the State. App. 661-665. On November 14, 2012, Petitioner filed an Amended Application for Post-Conviction Relief. App. 692-95. In the amended Application, Petitioner raised the following thirteen ineffective-assistance-of-counsel claims:

1. Trial counsel was ineffective for failing to object to testimony that the Applicant was a member of a gang;
2. Trial counsel was ineffective for failing to object to portions of the Solicitor's closing argument wherein the Solicitor argued that the Applicant committed the crime because he was a gang member;
3. Trial counsel was ineffective for failing to object to testimony by Investigator Eric Russell during the State's case-in-chief that George Mack identified the Applicant as the shooter on hearsay and Confrontation Clause grounds;
4. Trial counsel was ineffective for eliciting testimony from Investigator Russell that Mack identified the Applicant as the shooter;
5. Trial counsel was ineffective for failing to realize that he could move for a mistrial and/or a directed verdict at the close of the State's case based on the State's opening argument that all of the Applicant's co-defendants identified the Applicant as the shooter when Mack did not testify at the trial and his statement should have been excluded;
6. Trial counsel was ineffective for failing to object to the improper admission of prior consistent statements by Investigator Russell that Sherman Davis, Brandon Harmon, Alex Haigler, and James Keitt identified the Applicant as the shooter;

3

7. Trial counsel was ineffective for failing to object to the Solicitor's insertion of himself as a witness during Hope Prick's testimony;
8. Trial counsel was ineffective for failing to move to disqualify the Eleventh Circuit Solicitor's Office following the Solicitor's questioning of Hope Prick regarding the plea agreement that was reached between the Solicitor's Office and Mack;
9. Trial counsel was ineffective for failing to object to the admission of Mack's statement on hearsay and Confrontation Clause grounds;
10. Trial counsel was ineffective for failing to object to portions of Mack's statement referring to the Applicant's neighborhood as a "bad" neighborhood and that "people there all have guns";
11. Trial counsel was ineffective for failing to object to the trial court's charging the jury on the law of accomplice liability;
12. Trial counsel was ineffective for failing to object to the Solicitor's bolstering of the testimony of the Applicant's co-defendants in his closing argument where the Solicitor argued that he would not prosecute the co-defendants for murder since they had given full statements;
13. Trial counsel was ineffective for failing to present testimony that Mack had confessed to an inmate at the Lexington County Detention Center that he fired the assault rifle.

App. 692-93.

A PCR hearing convened on January 31, 2013, before the Honorable R. Lawton McIntosh. App. 696-771. Petitioner was present and represented by Jeremy A. Thompson, Esq., and Assistant Attorney General Karen C. Ratigan appeared on behalf of the State. *Id.* Petitioner and his trial counsel testified during the PCR hearing. *Id.* On March 28, 2013, the PCR court denied Petitioner's PCR Application in full, making the following findings of fact and conclusions of law:

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

This Court has had the opportunity to review the record in its entirety and has heard the testimony and arguments presented at the PCR hearing. This Court has further had the opportunity to observe each witness who testified at the hearing, and to closely pass upon their credibility. This Court has weighed the testimony accordingly.

Set forth below are the relevant findings of fact and conclusions of law as required by S.C. Code Ann. § 17-27-80 (2003).

## Ineffective Assistance of Counsel

4

The Applicant alleges he received ineffective assistance of counsel. In a PCR action, "[t]he burden of proof is on the applicant to prove his allegations by a preponderance of the evidence." Frasier v. State, 351 S.C. 385, 389, 570 S.E.2d 172, 174 (2002).

For an applicant to be granted PCR as a result of ineffective assistance of counsel, he must show both: (1) that his counsel failed to render reasonably effective assistance under prevailing professional norms, and (2) that he was prejudiced by his counsel's ineffective performance. See Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052 (1984); Porter v. State, 368 S.C. 378, 383, 629 S.E.2d 353, 356 (2006). In order to prove prejudice, an applicant must show "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Cherry v. State, 300 S.C. 115, 117-18, 386 S.E.2d 624, 625 (1989). "A reasonable probability is a probability sufficient to undermine confidence in the outcome of trial." Johnson v. State, 325 S.C. 182, 186, 480 S.E.2d 733, 735 (1997) (citing Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052).

Trial counsel testified he was appointed in this case and had 5-10 meetings with the Applicant while he was in jail. Trial counsel testified all of the co-defendants identified the Applicant as the shooter. Trial counsel testified the odds were slim that they would win at trial. Trial counsel testified the defense at trial was that the Applicant was not the shooter and the Applicant testified to that effect.

This Count finds trial counsel adequately conferred with the Applicant, conducted a proper investigation, and was thoroughly competent in his representation. This Court notes, however, that the State presented overwhelming evidence of the Applicant's guilt. Four of the Applicant's co-defendants (including the Applicant's brother) testified at trial and all of them identified the Applicant as the shooter. (Trial transcript, pp.57-58; pp. 97-98; pp.125-26; pp.151-54). Three other individuals identified the shooter as someone who was not present at the initial altercation. (Trial transcript, pp.185-86; p.227; pp.263-64). Two more individuals testified the last person they saw holding the assault rifle before the shooting had not been present at the initial altercation. (Trial transcript p.250; pp.274-75). The Applicant (along with Alex Haigler and James Keitt) were the only members of that group that were not present at the initial altercation. As such, this Court finds that any minor errors made by trial counsel during the trial could not and did not affect the ultimate outcome of the case. See Franklin v. Catoe, 346 S.C. 563, 570 n. 3, 552 S.E.2d 718, 722 n. 3 (2001) (finding overwhelming evidence of guilt negated any claim that counsel's deficient performance could have reasonably affected the result of defendant's trial); Geter v. State, 305 S.C. 365, 367, 409 S.E.2d 344, 346 (1991) (concluding reasonable probability of a different result does not exist when there is overwhelming evidence of guilt); State v. McFadden, 318 S.C. 404, 416, 458 S.E.2d 61, 68 (Ct. App. 1995) (holding the solicitor's comments did not infect the trial with

unfairness to the extent that his conviction was a denial of due process where there was ample evidence of guilt in the record).

## A.

Trial counsel testified the discovery materials included comments that the Applicant was in a gang. Trial counsel testified he believed these comments would come out at trial and decided not to file a motion in limine. Trial counsel testified he decided to attack the problem by arguing the organization mentioned was not a gang. Trial counsel noted the Applicant testified on direct examination that the organization in question was a music group.

This Court finds the Applicant failed to meet his burden of proving trial counsel should have objected to references to a gang. At trial, the Applicant's brother said he told someone he was not in a gang but his brother was. (Trial transcript, p.51). Jamar Porcher stated someone in his group said – at the initial altercation – that someone in the group was "GKB, and that's the – that's the blond gang group." (Trial transcript, p.178). The Applicant testified he was not in a gang. The Applicant testified he was involved with Gpan but it was called Gpan Entertainment (and he identified a CD released by Gpan Entertainment). (Trial transcript, p.460; p.463). In the state's reply, Investigator Russell read George Mack's statement into evidence, which detailed the initial altercation and argument about "if [the Applicant's brother] was Gpan and if [another individual] was a blood." (Trial transcript, p. 490). In closing argument, the Solicitor mentioned the above-referenced testimony from the Applicant's brother. (Trial transcript, p.520). The Solicitor stated "[The Applicant] doesn't care about the law. Not him. He's Gpan." and references the Applicant's testimony that Gpan is a music group. (Trial transcript, p.524;p.532). This Court finds the limited reference to gang activity during the trial did not have any effect on the outcome of that trial and thus trial counsel was not deficient in not objecting or seeking a motion in limine. This Court notes there only one witness who testified the Applicant was in a gang. The other references were to general gang activity that occurred during the initial altercation – an altercation where the Applicant was not present. Further, trial counsel stated he made a strategic decision to combat this issue by arguing Gpan was not a gang and the Applicant was able to explain the nature of Gpan and even identified on re-direct a CD produced by that group. See Roseboro v. State, 317 S.C. 292, 294, 454 S.E.2d 312, 313 (1995) (finding where trial counsel articulates a valid reason for employing a certain strategy, such conduct should not be deemed ineffective assistance of counsel). This Court finds any references to gang activity did not prejudice the outcome of the trial. See Cherry v. State, 300 S.C. at 117-18, 386 S.E.2d at 625.

## B.

Trial counsel stated he believed all of the Applicant's co-defendants would testify at trial. Trial counsel testified that is why he did not object when the Solicitor

mentioned a statement made by George Mack during its opening argument. (Trial transcript, pp.39-40). Trial counsel testified he did not object when Investigator Russell implied Mack said the Applicant was the shooter. (Trial transcript, pp.397-98; pp.400-01). Trial counsel acknowledged the first thing he asked Russell on cross-examination was to verify Mack had identified the Applicant as the shooter. (Trial transcript, p.405). Trial counsel testified he did not move for a mistrial – because Mack did not end up testifying – but admitted Mack's statements to police were cumulative to statements and testimony presented at trial.

This Court finds the Applicant failed to meet his burden of proving trial counsel mishandled issues related to comments made at trial about George Mack. This Court finds there was no basis for trial counsel to have objected to Russell's testimony. This was not hearsay testimony; it was merely testimony about statements made during the course of the investigation that explain why the investigation – into the Applicant as the shooter – was undertaken. See Caprood v. State, 39 S.C. 103, 111, 525 S.E.2d 514, 518 (2000). This Court also finds there was no error in trial counsel's question to Russell in which he had Russell verify Mack had identified the Applicant as the shooter. This was clearly cumulative testimony. This Court further finds there was no basis for trial counsel to have moved for a mistrial. Based on the cumulative nature of Mack's statement and the overwhelming evidence of the Applicant's guilt, trial counsel would not have been able to demonstrate any prejudice. See State v. Harris, 340 S.C. 59, 63, 530, S.E.2d 626, 628 (2000) ("In order to receive a mistrial, the defendant must show error and resulting prejudice.").

### C.

Trial counsel testified Mack's statement was admitted at trial. (Trial transcript, pp.189-92). Trial counsel testified he did not object to a portion of the statement because he questioned whether or not it was really evidence of bad character. (Trial transcript, p.489, lines 13-14). Trial counsel testified it was part of his trial strategy to have Mack's statement and sentencing sheets admitted.

This Court finds the Applicant failed to meet his burden of proving trial counsel mishandled issues related to Mack's statement. This Court finds from both the trial transcript and testimony at the PCR hearing that it was clear trial counsel's strategy was two-fold: to argue the Applicant was not the shooter and to highlight that the co-defendants all pled guilty to the lesser charge of accessory after the fact. To this end, trial counsel argued that he should be allowed to enter Mack's sentencing sheets into evidence. (Trial transcript, p.467). After discussion between the judge and parties, all agreed to allow admission of both Mack's sentencing sheets and statement. (Trial transcript, pp.468-77). Trial counsel noted to the trial judge this was a strategic decision. (Trial transcript, p.469; p.471). This Court finds trial counsel did not render deficient performance because this was a valid trial strategy. See Roseboro v. State, 317 S.C. at 294, 454 S.E.2d at 313.

This Court further finds the Applicant cannot prove he was prejudiced from this strategic decision because, as noted supra, the information in Mack's statement was cumulative to the testimony from the other four co-defendants. See Cherry v. State, 300 S.C. at 117-18, 386 S.E.2d at 625.

**D.**

Trial counsel noted Investigator Russell testified that the Applicant's co-defendants had identified the Applicant. (Trial transcript, pp.402-05). Trial counsel stated he did not object.

This Court finds the Applicant failed to meet his burden of proving trial counsel should have objected to Investigator Russell's testimony that the co-defendants had identified the Applicant. Investigator Russell testified he believed the Applicant was involved with the shooting. (Trial transcript, pp.400-01). Investigator Russell testified he continued to investigate and interviewed the Applicant's co-defendants – who all stated the Applicant was the shooter. (Trial transcript, pp.402-05). This Court finds that, as this was not hearsay testimony, trial counsel was not deficient in failing to object. As noted supra, our Supreme Court has held that statements made for the purpose of explaining why the State's investigation was undertaken do not qualify as hearsay. See Caprood v. State, 39 S.C. 111, 525 S.E.2d at 518. Further, Investigator Russell's statements in this regard were merely cumulative to the four co-defendants' prior testimony in which they identified the Applicant as the shooter in open court.

**E.**

Trial counsel testified he did not object when the Solicitor asked the Clerk of Court – Hope Frick – about Mack's sentencing sheets and guilty plea. Trial counsel testified he also did not move for a mistrial. Trial counsel admitted, however, that he wanted Mack's sentencing sheet to be admitted at trial because it was part of his trial strategy to demonstrate that the Applicant's co-defendants all received plea deals. Trial counsel further admitted that not moving for a mistrial likely did not change the outcome of the trial.

This Court finds the Applicant failed to meet his burden of proving trial counsel should have objected or moved for a mistrial during the Solicitor's direct examination of Hope Frick. As discussed supra, it was determined by the parties that Mack's sentencing sheets would be entered into evidence. (Trial transcript, pp.468-77). Trial counsel called Hope Frick, the supervisor of the criminal division in the Lexington County Clerk of Court's office, to authenticate Mack's sentencing sheet, and note he received a seven-year sentence for a guilty plea to accessory after the fact and that several warrants that had been dismissed. (Trial transcript, pp.478-81). On cross-examination, the Solicitor asked Frick several questions about the indictment process. (Trial transcript pp.481-83). The Solicitor asked "I can't try anybody unless the Grand Jury indicts them for a crime; can I?"

8

and Frick said "[c]orrect." The Solicitor then asked if Mack was ever indicted for murder and Frick said he had not. (Trial transcript, pp.483-84). Pursuant to the Solicitor's questions about Mack's sentencing sheet, Frick also stated he had been indicted for accessory after the fact and the State had not made recommendations or negotiations. (Trial transcript, p.484). The Solicitor then asked "[s]o we didn't have anything to do with the sentencing" and Frick said no. (Trial transcript, p.484).

Contrary to the Applicant's assertion, this Court does not find the Solicitor effectively made himself a witness during Frick's cross-examination. Rather, as noted <u>supra</u> in Section C of this order, it is clear the parties agreed to have both Mack's sentencing sheet introduced into evidence. Trial counsel stated at the time this was part of his defense strategy. (Trial transcript, p.469; p.471). Again, this Court finds this was a valid strategy. <u>See</u> <u>Roseboro v. State</u> 317 S.C. at 294, 454 S.E.2d at 313. In any event, this Court finds the Solicitor's comments were not made from a personal angle. Instead the Solicitor was merely asking if the Solicitor's Office – as a whole – do such things as pursue cases without an indictment or have impact on sentencing in a case without a negotiation or recommendation. As the Solicitor did not make himself a witness in this case, this Court finds the Applicant's reliance on <u>State v. Sierra</u>, 337 S.C. 368, 523 S.E. 2d 187 (Ct. App. 1999) is misplaced. Further, trial counsel was not deficient in not moving for a mistrial during Frick's testimony. Based on the overwhelming evidence of the Applicant's guilt, trial counsel would not have been able to demonstrate any prejudice. <u>See</u> <u>State v. Harris</u>, 340 S.C. at 63, 530 S.E.2d at 628.

## F.

Trial counsel noted he did not object during the Solicitor's closing argument when he said the Applicant's co-defendants were telling the truth. (Trial transcript, p.530).

This Court finds the Applicant failed to meet his burden of proving trial counsel should have objected to the Solicitor's comments. The Solicitor made the following statements about the co-defendants:

> But folks, they weren't lying. They were telling the truth.

> They told the truth on that Saturday night. They told the truth Sunday morning. They told the truth Sunday afternoon. And they told the truth Monday . . . .

> And I'm going to prosecute five people who have given full – for murder?

(Trial transcript, p.530, lines 11-20). This Court finds the Solicitor's comments did not constitute either bolstering or vouching. The Solicitor did not say he

believed these witnesses or that the jury should believe them. See e.g., Gilchrist v. State, 350 S.C. 221, 227, 565 S.E.2d 281, 285 (2002) ("Improper vouching occurs when the prosecution places the government's prestige behind a witness by making explicit personal assurances of a witness' veracity …"). Rather, the Solicitor's comments merely referred to the credibility of these four co-defendants/eyewitnesses. See Matthews v. State, 350 S.C. 272, 276, 565 S.E.2d 766, 768 (2002) ("A solicitor may argue the credibility of the State's witnesses if the argument is based on the record and its reasonable inferences.").

## G.

Trial counsel testified he should have objected to the trial's judge's charge on accomplice liability because the Applicant's co-defendants all pled guilty to accessory after the fact and the Applicant was on trial for murder.

This Court finds the Applicant failed to meet his burden of proving trial counsel should have objected to the jury charge for accomplice liability, or "the hand of one is the hand of all." This Court finds that, given the facts presented at trial, the charge for accomplice liability was appropriate. See State v. Knoten, 347 S.C. 296, 302, 555 S.E.2d 391, 394 (2001) (finding the law to be charged must be determined from the evidence presented at trial). The South Carolina Supreme Court has stated under "the hand of one is the hand of all" theory, "one who joins with another to accomplish an illegal purpose is liable criminally for everything done by his confederate incidental to the execution of the common design and purpose." State v. Langley, 334 S.C. 643, 515 S.E.2d 98 (1999). While the Applicant argues he should not have been charged on accomplice liability because his co-defendants pled guilty to accessory after the fact, this Court finds this argument is unpersuasive because the facts and evidence presented at trial clearly supported a charge of accomplice liability. See State v. Peer, 320 S.C. 546, 553, 466 S.E.2d 375, 380 (Ct. App. 1996) (finding a trial judge has a duty to give a requested instruction that correctly states the law applicable to the issues and is supported by the evidence).

## H.

Accordingly, this Court finds the Applicant has failed to prove the first prong of the Strickland test – that trial counsel failed to render reasonably effective assistance under prevailing professional norms. The Applicant failed to present specific and compelling evidence that trial counsel committed either errors or omissions in his representation of the Applicant. This Court also finds the Applicant has failed to prove the second prong of Strickland – that he was prejudiced by trial counsel's performance. This Court concludes the Applicant has not met his burden of proving counsel failed to render reasonably effective assistance. See Frasier v. State, 351 S.C. at 389, 570 S.E.2d at 174.

## All Other Allegations

As to any and all allegations that were raised in the application or at the hearing in this matter and not specifically addressed in this Order, this Court finds the Applicant failed to present any evidence regarding such allegations. Accordingly, this Court finds the Applicant waived such allegations and failed to meet his burden of proof regarding them. Therefore, they are hereby denied and dismissed.

## <u>CONCLUSION</u>

Based on all the foregoing, this Court finds and concludes the Applicant has not established any constitutional violations or deprivations before or during his trial and sentencing proceedings. Counsel was not deficient and the Applicant was not prejudiced by counsel's representation. Therefore, this PCR application must be denied and dismissed with prejudice.

This Court advised the Applicant he must file a notice of intent to appeal within thirty (30) days from the receipt of this Order if he wants to secure appropriate appellate review. His attention is also directed to Rules 203, 206, and 243 of the South Carolina Appellate Court Rules for the appropriate procedures to follow after notice of intent to appeal has been timely filed.

**IT IS THEREFORE ORDERED:**

1. That the application for post-conviction relief be denied and dismissed with prejudice; and

2. That the Applicant be remanded to the custody of the Respondent.

App. 772-785. Jeremy Thompson, Esq., filed a Petition for Writ of Certiorari on Petitioner's behalf, dated January 9, 2014. ECF No. 8-8. Therein, he presented the following three issues for review:

Whether the lower court improperly found defense counsel was not ineffective for failing to object to irrelevant and prejudicial testimony that the Petitioner belonged to a violent gang?

Whether the lower court improperly found defense counsel was not ineffective for failing to object to portions of the Solicitor's closing argument where the Solicitor argued that the Petitioner committed the crimes because he was a gang member?

Whether the lower court improperly found defense counsel was not ineffective for failing to object to the Solicitor making himself a witness during his cross-examination of a defense witness?

*Id.* at 2. Assistant Attorney General Karen C. Ratigan filed a Return to the Petition for Writ of

Certiorari, ECF No. 8-9, and Petitioner filed a Reply to the Return, ECF No. 8-10. The South

Carolina Supreme Court of Appeals denied the petition on August 7, 2014, and issued the

Remittitur on August 25, 2014. ECF Nos. 8-11, 8-12. This federal habeas Petition followed. ECF

No. 1.

III.   Discussion

A.  Federal Habeas Issues

Petitioner raises the following three issues in his Federal Petition for a Writ of Habeas

Corpus, quoted verbatim:

> GROUND ONE: Ineffective assistance of counsel for failure to object to
> testimony and references about Petitioner's membership in a gang. ECF No. 1 at
> 5.
>
> Supporting Facts: Throughout the trial, the prosecutor made a number of
> references to Petitioner Harmon's membership in a gang. He also elicited
> testimony of the same nature. Harmon's trial counsel never attempted to suppress
> this evidence, nor did he object to it at the trial.
>
> There did not appear to be any allegation the shooting that led to this prosecution
> was a gang-related crime. However, there were numerous references to gang
> membership throughout the trial. A number of co-defendants and witnesses
> referenced gang membership in their testimony. In addition, the solicitor
> referenced gang membership in his closing argument.
>
> Harmon's counsel did not object to any of these references, nor did he move
> before trial to limit any references to gang membership. This information was
> both objectionable and highly prejudicial. Because there was no objection to the
> information and it was essentially allowed to go to the jury unchallenged, Harmon
> was denied his Sixth Amendment right to effective counsel. ECF No. 1-1 at 2-3.
>
> GROUND TWO: Ineffective assistance of counsel for failure to object to
> Solicitor making himself a witness during cross-examination. ECF No. 1 at 7.
>
> Supporting Facts: During the trial, defense counsel called the Lexington County
> Clerk of Court as a witness to discuss the conviction records of a co-defendant
> who did not testify at the trial. When defense counsel sought to introduce this

information, the State argued it should be allowed to introduce the statement of a co-defendant who did not testify at trial.

While cross-examining the clerk who was called to introduce the records, the solicitor asked a number of misleading questions related to his power as a prosecutor. The solicitor became a witness when he began making factual assertions regarding his power as a prosecutor. This was especially important in light of his suggestions that he had little power over the negotiation of criminal charges.

This information suggested an independent and unbiased body made the ultimate decision to charge all of the co-defendants with accessory after the fact to murder, while Harmon was charged with murder. It was never explained that the Solicitor's Office was responsible for all of the final charges of each co-defendant. The information was prejudicial and should not have been allowed to go to the jury unchallenged.

Harmon was denied his Sixth Amendment right to effective assistance of counsel in this matter. ECF No. 1-1 at 3.

GROUND THREE: Ineffective assistance of counsel for failure to object to trial court's accomplice liability charge. ECF No. 1 at 8.

Supporting Facts: After both sides rested, the judge charged the jury on the law of the case. The trial judge charged the jury on accomplice liability, which allows the jury to convict the defendant of a crime if he was involved as an accomplice. All of the co-defendants in this matter were alleged to be accessories after the facts, which would not have supported an accomplice liability theory in this case.

Because there was no objection, the jury was allowed to consider Petitioner's guilt under the broader accomplice liability theory, when there was no evidence to support such a theory. The failure to object to this charge denied Harmon his Sixth Amendment right to the effective assistance of counsel. ECF No. 1-1 at 4.

B.  Standard for Summary Judgment

The court shall grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears the initial burden of demonstrating that summary judgment is appropriate; if the movant carries its burden, then the burden shifts to the non-movant to set forth specific facts showing that there is a genuine issue for trial.  *See Celotex Corp. v. Catrett*, 477

U.S. 317, 322-23 (1986).  If a movant asserts that a fact cannot be disputed, it must support that assertion either by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials;" or "showing . . . that an adverse party cannot produce admissible evidence to support the fact."  Fed. R. Civ. P. 56(c)(1).

In considering a motion for summary judgment, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in favor of the non-moving party.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* at 248. Further, while the federal court is charged with liberally construing a complaint filed by a pro se litigant to allow the development of a potentially meritorious case, *see, e.g., Cruz v. Beto*, 405 U.S. 319 (1972), the requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts that set forth a federal claim, nor can the court assume the existence of a genuine issue of material fact when none exists. *Weller v. Dep't of Soc. Servs.*, 901 F.2d 387 (4th Cir. 1990).

C.  Habeas Corpus Standard of Review

1.     Generally

Because Petitioner filed his petition after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), review of his claims is governed by 28 U.S.C. § 2254(d), as amended. *Lindh v. Murphy*, 521 U.S. 320, 336 (1997); *Breard v. Pruett*, 134 F.3d 615, 618 (4th Cir. 1998). Under the AEDPA, federal courts may not grant habeas corpus relief

unless the underlying state adjudication: (1) resulted in a decision that was contrary to, or involved an unreasonable application of clearly established federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented at the state court proceeding. 28 U.S.C. § 2254(d)(1)(2); *see Williams v. Taylor*, 529 U.S. 362, (2000). "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.* at 411.

### a.  Deference to State Court Decisions

Courts afford deference to state courts' resolutions of the habeas claims of state prisoners. *See Bell v. Cone*, 543 U.S. 447, 455 (2005). Recently, the Supreme Court provided further guidance regarding the deference due to state-court decisions. *Harrington v. Richter*, 562 U.S. 86 (2011); *Cullen v. Pinholster*, 131 S. Ct. 1388 (2011). To obtain habeas relief from a federal court, "a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington*, 562 U.S. at 103. "[E]ven a strong case for relief does not mean the state court's contrary conclusion was unreasonable." 562 U.S. at 102. In *Harrington*, the Court further stated: "If this standard is difficult to meet, that is because it was meant to be." *Id.*; *see Richardson v. Branker*, 668 F.3d 128, 137-44 (4th Cir. 2012) (quoting *Harrington* extensively and reversing district court's grant of writ based on his ineffective assistance of counsel claims).

In interpreting § 2254(d)(1) and discussing the federal courts' role in reviewing legal determinations made by state courts, the United States Supreme Court held as follows:

> [A] federal court may grant a writ of habeas corpus if the relevant state-court decision was either (1) "contrary to . . . [clearly] established Federal law as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court of the United States.

*Williams v. Taylor*, 529 U.S. 362, 404-05 (2000) (quoting from § 2254(d)(1)). "Clearly established Federal law in § 2254(d)(1) refers to the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." *Carey v. Musladin*, 549 U.S. 70, 74 (2006) (quoting *Williams*, 529 U.S. at 412). In considering whether a state-court decision is "contrary to" clearly established federal law, the federal court may not grant relief unless the state court arrived at a conclusion opposite to that reached by the Supreme Court on a legal question, the state court decided the case differently than the Court has on facts that are materially indistinguishable, or if the state court "identifie[d] the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applie[d] that principle to the facts of the prisoner's case." *Williams*, 529 U.S. 362, 405-13. The "unreasonable application" portion of § 2254(d)(1) "requires the state court decision to be more than incorrect or erroneous[,]" it "must be objectively unreasonable," which is a higher threshold. *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003) (internal citation omitted).

Section 2254(e)(1) requires the federal court give a presumption of correctness to state-court factual determinations and provides that a petitioner can only rebut such a presumption by "clear and convincing evidence." 28 U.S.C. § 2254(e)(1). Accordingly, a habeas petitioner is entitled to relief under § 2254(d)(2), only if he can prove, by clear and convincing evidence, that the state court unreasonably determined the facts in light of the evidence presented in state court.

b.  Ineffective Assistance of Counsel

16

The Sixth Amendment provides a criminal defendant the right to effective assistance of counsel in a criminal trial and first appeal of right. In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court announced a two-part test for adjudicating ineffective assistance of counsel claims. First, a petitioner must show that counsel's performance fell below an objective standard of reasonableness under prevailing professional norms. *Id.* at 687. Second, the petitioner must show that this deficiency prejudiced the defense. *Id.* at 694. The United States Supreme Court's 2011 decisions cited previously elaborate on the interplay between *Strickland* and § 2254, noting the standards are "both highly deferential," and "when the two apply in tandem, review is doubly so." *Harrington*, 562 U.S. at 105 (internal quotation marks omitted); *Pinholster*, 131 S. Ct. at 1403.

Further, in *Pinholster*, the Court held for the first time that the federal court's habeas review under § 2254(d)(1) is limited to the record before the state court that adjudicated the claim on the merits. *Pinholster*, 131 S. Ct. at 1398. The Court explained that "review under § 2254(d)(1) focuses on what a state court knew and did." *Id.* at 1399. In the *Pinholster* case, the district court had conducted an evidentiary hearing and considered new evidence in connection with its review and granting of the petitioner's writ based on a finding of ineffective assistance of counsel. *Id.* at 1397. In an en banc decision, the Ninth Circuit Court of Appeals affirmed the district court's grant of the writ. *Id.* The United States Supreme Court granted certiorari and reversed the Ninth Circuit, finding that the district court should not have considered additional evidence that had not been available to the state courts. 131 S. Ct. at 1398. Because the federal habeas scheme "leaves primary responsibility with the state courts," and "requires that prisoners ordinarily must exhaust state remedies," the Court held that to permit new evidence to be

presented in a federal habeas court "would be contrary to that purpose." 131 S. Ct. at 1399 (internal citation and quotation marks omitted).

When a petitioner raises in a § 2254 habeas petition an ineffective-assistance-of-counsel claim that was denied on the merits by a state court, "[t]he pivotal question is whether the state court's application of the *Strickland* standard was unreasonable[,]" not "whether defense counsel's performance fell below *Strickland's* standard." *Harrington*, 562 U.S. at 101. "For purposes of § 2254(d)(1), 'an *unreasonable* application of federal law is different from an *incorrect* application of federal law.'" *Id.* (citing *Williams*, 529 U.S. at 410) (emphasis in original). "A state court must be granted a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself." *Id.*

### 2. Procedural Bar

Federal law establishes this court's jurisdiction over habeas corpus petitions. 28 U.S.C. § 2254. This statute permits relief when a person "is in custody in violation of the Constitution or laws or treaties of the United States[,]" and requires that a petitioner present his claim to the state's highest court with authority to decide the issue before the federal court will consider the claim. 28 U.S.C. § 2254(a)-(b). The separate but related theories of exhaustion and procedural bypass operate in a similar manner to require that a habeas petitioner first submit his claims for relief to the state courts. A habeas corpus petition filed in this court before the petitioner has appropriately exhausted available state-court remedies or has otherwise bypassed seeking relief in the state courts will be dismissed absent unusual circumstances detailed below.

### a. Exhaustion

Section 2254 contains the requirement of exhausting state-court remedies and provides as follows:

(b)    (1) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court, shall not be granted unless it appears that—

        (A)    the applicant has exhausted the remedies available in the courts of the State; or

        (B)    (i) there is an absence of available State corrective process; or

                (ii) circumstances exist that render such process ineffective to protect the rights of the applicant.

    (2) An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.

    (3) A State shall not be deemed to have waived the exhaustion requirement or be estopped from reliance upon the requirement unless the State, through counsel, expressly waives the requirement.

(c)    An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

The statute requires that, before seeking habeas corpus relief, the petitioner first must exhaust his state court remedies. 28 U.S.C. § 2254(b)(1)(A). "To satisfy the exhaustion requirement, a habeas petitioner must present his claims to the state's highest court." *Matthews v. Evatt*, 105 F.3d 907, 911 (4th Cir. 1997) *overruled on other grounds by U.S. v. Barnette*, 644 F.3d 192 (4th Cir. 2011). Thus, a federal court may consider only those issues that have been properly presented to the highest state courts with jurisdiction to decide them.

In South Carolina, a person in custody has two primary means of attacking the validity of his conviction: (1) through a direct appeal; or (2) by filing an application for PCR. State law requires that all grounds be stated in the direct appeal or PCR application. Rule 203 SCACR; S.C. Code Ann. § 17-27-10, *et seq.*; S.C. Code Ann. § 17-27-90; *Blakeley v. Rabon*, 221 S.E.2d 767, 770 (S.C. 1976). If the PCR court fails to address a claim as is required by section 17-27-80

of the South Carolina Code, counsel for the applicant must make a motion to alter or amend the judgment pursuant to Rule 59(e), SCRCP. Failure to do so will result in the application of a procedural bar by the South Carolina Supreme Court. *Marlar v. State*, 653 S.E.2d 266, 267 (S.C. 2007). Strict time deadlines govern direct appeals and the filing of a PCR in the South Carolina courts. A PCR must be filed within one year of judgment, or if there is an appeal, within one year of the appellate court decision. S.C. Code Ann. § 17-27-45.

Furthermore, in filing a petition for habeas relief in the federal court, a petitioner may present only those issues that were presented to the South Carolina Supreme Court or the South Carolina Court of Appeals. *See State v. McKennedy*, 559 S.E.2d 850, 853 (S.C. 2002) (holding "that in all appeals from criminal convictions or post-conviction relief matters, a litigant shall not be required to petition for rehearing and certiorari following an adverse decision of the Court of Appeals in order to be deemed to have exhausted all available state remedies respecting a claim of error") (quoting *In re Exhaustion of State Remedies in Criminal and Post-Conviction Relief*, 471 S.E.2d 454, 454 (S.C. 1990)).

> b.    Procedural Bypass

Procedural bypass, sometimes referred to as procedural bar or procedural default, is the doctrine applied when a petitioner who seeks habeas corpus relief as to an issue failed to raise that issue at the appropriate time in state court and has no further means of bringing that issue before the state courts. In such a situation, the person has bypassed his state remedies and, as such, is procedurally barred from raising the issue in his federal habeas petition. Procedural bypass of a constitutional claim in earlier state proceedings forecloses consideration by the federal courts. *See Smith v. Murray*, 477 U.S. 527, 533 (1986). Bypass can occur at any level of

the state proceedings if the state has procedural rules that bar its courts from considering claims not raised in a timely fashion.

The South Carolina Supreme Court will refuse to consider claims raised in a second appeal that could have been raised at an earlier time. Further, if a prisoner has failed to file a direct appeal or a PCR and the deadlines for filing have passed, he is barred from proceeding in state court. If the state courts have applied a procedural bar to a claim because of an earlier default in the state courts, the federal court honors that bar. As the United States Supreme Court explains:

> [state procedural rules promote] not only the accuracy and efficiency of judicial decisions, but also the finality of those decisions, by forcing the defendant to litigate all of his claims together, as quickly after trial as the docket will allow, and while the attention of the appellate court is focused on his case.

*Reed v. Ross*, 468 U.S. 1, 10-11 (1984).

However, if a federal habeas petitioner can show both (1) "'cause' for noncompliance with the state rule[,]" and (2) "'actual prejudice resulting from the alleged constitutional violation[,]'" the federal court may consider the claim. *Smith v. Murray*, 477 U.S. at 533 (quoting *Wainwright v. Sykes*, 433 U.S. 72, 84 (1977)). When a petitioner has failed to comply with state procedural requirements and cannot make the required showing of cause and prejudice, the federal courts generally decline to hear the claim. *Murray v. Carrier*, 477 U.S. 478, 496 (1986).

If a federal habeas petitioner has failed to raise a claim in state court and is precluded by state rules from returning to state court to raise the issue, he has procedurally bypassed his opportunity for relief in the state courts and in federal court. A federal court is barred from considering the filed claim (absent a showing of cause and actual prejudice). In such an instance, the exhaustion requirement is technically met and the rules of procedural bar apply. *See Teague*

*v. Lane*, 489 U.S. 288, 297-98 (1989); *Matthews*, 105 F.3d at 915 (citing *Coleman v. Thompson*, 501 U.S. 722, 735 n.1 (1991); *George v. Angelone*, 100 F.3d 353, 363 (4th Cir. 1996)).

   3.   Cause and Actual Prejudice

Because the requirement of exhaustion is not jurisdictional, this court may consider claims that have not been presented to the South Carolina Supreme Court in limited circumstances in which a petitioner shows sufficient cause for failure to raise the claim and actual prejudice resulting from the failure, *Coleman*, 501 U.S. at 750, or that a "fundamental miscarriage of justice" has occurred. *Murray v. Carrier*, 477 U.S. at 495–96. A petitioner may prove cause if he can demonstrate ineffective assistance of counsel relating to the default, show an external factor that hindered compliance with the state procedural rule, or demonstrate the novelty of a particular claim. *Id.* Absent a showing of cause, the court is not required to consider actual prejudice. *Turner v. Jabe*, 58 F.3d 924, 931 (4th Cir. 1995). However, if a petitioner demonstrates sufficient cause, he must also show actual prejudice in order to excuse a default. *Murray v. Carrier*, 477 U.S. at 492. To show actual prejudice, the petitioner must demonstrate more than plain error.

III.   Analysis

   A.   Procedurally-Barred Grounds

As an initial matter, Respondent maintains Ground Three was procedurally defaulted in state court. ECF No. 8 at 37-39. Specifically, Respondent concedes that Ground Three was raised in Petitioner's PCR Application and that the PCR ruled on Ground Three. *Id.* at 37. However, Respondent represents that Ground Three was not raised in Petitioner's PCR Petition for Certiorari to the South Carolina Supreme Court. *Id.* Therefore, Respondent argues that "since [Petitioner] did not raise the claim now raised in Ground Three in the PCR appeal, but it could

not be raised again in state court, the claim is technically exhausted and subject to procedural bars." *Id.* at 38.

In his response, Petitioner does not contest Respondent's representation that Ground Three was not raised to the South Carolina Supreme Court's attention. ECF No. 13 at 20. However, Petitioner argues that "[w]hile the issue is barred as not having been exhausted, [he] can overcome the bar by showing 'cause and prejudice.'" *Id.* Additionally, Petitioner cites to *Martinez v. Ryan*, 132 S. Ct. 1309 (2012), for the proposition that "failure of counsel at an 'initial review collateral proceeding' may establish cause for a procedural default of a claim of ineffective assistance of trial counsel." *Id.* Further, Petitioner maintains that though this issue was presented to the PCR court's attention, "there was no development of the issue." *Id.* Therefore, Petitioner maintains that Ground Three should be excused from the procedural default because it "falls within the narrow holding of *Martinez* and should be heard on its merits." *Id.*

In Reply, Respondent argues that *Martinez* does not excuse the procedural default in this case. ECF No. 14 at 2. Further, Respondent maintains that "[a]ppointed counsel for the initial review collateral proceeding raised the claim and garnered adequate review, [and] [t]he issue was preserved for appellate review in the collateral appeal in state court." *Id.* Additionally, Respondent asserts that "[t]he default arose from collateral appellate counsel's decision not to raise the claim in the PCR appeal." *Id.* Thus, it is Respondent's position that because "the default arises from the collateral appellate proceeding and not the initial review proceeding, *Martinez* does not apply." *Id.* The undersigned agrees that Ground Three is procedurally defaulted and not excused from the default based on the *Martinez* holding.

Because Petitioner did not raise Ground Three in his PCR appeal, he is procedurally barred from raising it in his habeas Petition. *See, e.g. Coleman v. Thompson,* 501 U.S. at 728-29

(issue not properly raised to the state's highest court, and procedurally impossible to raise there now, is procedurally barred from review in federal habeas); *Williams v. Warden*, No. 4:08-2312-SB, 2009 WL 3052487, at *13 (D.S.C. Sept. 23, 2009) (finding that because petitioner "did not properly present this claim to the state's highest court in a procedurally viable manner when he had the opportunity, and the state courts would find any attempt to raise the claim now to be procedurally improper, then the claim is procedurally barred from review in federal habeas corpus"). Petitioner maintains that Ground Three should be excused from the default based on *Martinez*.

In *Martinez*, the Supreme Court reviewed a case where an Arizona state prisoner petitioned for writ of habeas corpus. *Id.* at 1310. Arizona, like South Carolina, requires "claims of ineffective assistance at trial to be reserved for state collateral proceedings." *Id.* at 1314. Martinez's attorney in his state collateral proceeding filed a notice for PCR, however, she later filed a statement "asserting she could find no colorable claims at all." *Id.* Ultimately, Martinez's PCR action was dismissed. *Id.* Later, with the assistance of new PCR counsel, Martinez filed a second notice for PCR where he raised several ineffective-assistance-of-trial-counsel claims. *Id.* However, the Arizona trial and appellate courts denied Martinez relief because he failed to raise his second PCR claims in the first PCR. *Id.* In his district court habeas petition, Martinez raised his ineffective-assistance-of-trial-counsel claims. *Id.* There, he argued that he should overcome any procedural hurdles related to these claims because his first PCR counsel was ineffective in failing to raise any claims in the first PCR action. *Id.* at 1314-15.

There, the Supreme Court held that "[i]nadequate assistance of counsel at *initial-review collateral proceedings* may establish cause for a prisoner's procedural default of a claim of

ineffective assistance at trial." *Id.* at 1315 (emphasis added). In its analysis, the *Martinez* Court

recognized that *Coleman v. Thompson*, 501 U.S. 722, 754 (1991), held:

> [A]n attorney's errors during an appeal on direct review may provide cause to
> excuse a procedural default; for if the attorney appointed by the State to pursue
> the direct appeal is ineffective, the prisoner has been denied fair process and the
> opportunity to comply with the State's procedures and obtain an adjudication on
> the merits of his claims.

*Id.* at 1317. If a state requires a prisoner to raise ineffective assistance of trial counsel in a

collateral proceeding, the *Martinez* Court determined a prisoner may establish cause for a default

of an ineffective-assistance claim in the following two circumstances:

> [1] where the state courts did not appoint counsel in the initial-review collateral
> proceeding for a claim of ineffective assistance at trial [and 2] where appointed
> counsel in the initial-review collateral proceeding, where the claim should have
> been raised, was ineffective under the standards of *Strickland v. Washington,* 466
> U.S. 668, 104 S. Ct. 2052, 80 L.Ed.2d 674 (1984). To overcome the default, a
> prisoner must also demonstrate that the underlying ineffective-assistance-of-trial-
> counsel claim is a substantial one, which is to say that the prisoner must
> demonstrate that the claim has some merit.

*Id.* at 1318.

     As Respondent argues, in some instances, *Martinez* will allow a procedurally barred

claim to be reviewed on the merits when the PCR attorney was ineffective or failed to raise a

ground on collateral review. However, *Martinez* does not stand for the proposition that default on

collateral review appeal may be excused for ineffective PCR counsel. *See Coleman v. Thompson*,

501 U.S. 722, 757 (1991) ("Because Coleman had no right to counsel to pursue his appeal in

state habeas, any attorney error that led to the default of Coleman's claims in state court cannot

constitute cause to excuse the default in federal habeas."); *see also Martinez*, 132 S.Ct. at 1319–

20 ("Coleman held that an attorney's negligence in a post conviction proceeding does not

establish cause, and this remains true except as to initial-review collateral proceedings for claims

of ineffective assistance of counsel at trial.); *Id.* at 1320 ("The rule of *Coleman* governs in all but

the limited circumstances recognized here. The holding in this case does not concern attorney errors in other kinds of proceedings, including appeals from initial-review collateral proceedings, second or successive collateral proceedings, and petitions for discretionary review in a State's appellate courts."); *Norris v. Brooks*, 794 F.3d 401, 405 (3d Cir. 2015) ("*Martinez* made very clear that its exception to the general rule of *Coleman* applies only to attorney error causing procedural default during initial-review collateral proceedings, not collateral appeals."). Therefore, the undersigned recommends granting Respondent Summary Judgment and dismissing Ground Three because it was procedurally defaulted, and the default is not excused under *Martinez*.

Outside of *Martinez*, a Petitioner may, nonetheless, overcome procedural defaults and have his claims addressed on the merits, by showing either cause and prejudice for the default, or that a miscarriage of justice would result from the lack of such review. *See Coleman*, 501 U.S. at 750; *Savino v. Murray*, 82 F.3d 593, 602-03 (4th Cir. 1996). The existence of cause ordinarily turns upon a showing of: 1) a denial of effective assistance of counsel, 2) a factor external to the defense which impeded compliance with the state procedural rule, or 3) the novelty of the claim. *Murray*, 477 U.S. at 488. Petitioner argues only that the matters should be excused based on cause and prejudice under the *Martinez* analysis. *See* ECF No. 13 at 20-22. Having reviewed the record, evidence, and the parties' legal memoranda, the undersigned finds that Petitioner has not shown sufficient cause and prejudice to excuse the default of the above-referenced claims. Thus, Ground Three is procedurally barred from consideration by this court and should be dismissed. *Mazzell v. Evatt*, 88 F.3d 263, 269 (4th Cir. 1996) (finding in order to show prejudice a Petitioner must show that there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different); *Rodriguez v. Young*, 906 F.2d 1153, 1159 (7th Cir. 1990)

("Neither cause without prejudice nor prejudice without cause gets a defaulted claim into federal court.").

In order to demonstrate a miscarriage of justice, Petitioner must show he is actually innocent. Actual innocence is defined as factual innocence, not legal innocence. *Bousley v. United States*, 523 U.S. 614, 623 (1998). Petitioner cannot establish that the errors he complains of probably resulted in the conviction of an innocent person. *Schlup v. Delo*, 513 U.S. 298, 327 (1995). In order to pass through the actual-innocence gateway, a petitioner's case must be "truly extraordinary." *Id.* (internal citation omitted). The court's review of the record does not support a showing of any cause and prejudice or actual innocence to excuse the default. Thus, Ground Three is procedurally barred from consideration by this court and should be dismissed. The undersigned therefore recommends that the Respondent's Motion for Summary Judgment be granted as to Ground Three and will only address Grounds One and Two on the merits.[2]

B.  Merits

In Grounds One and Two Petitioner alleges ineffective assistance of counsel. The Sixth Amendment to the United States Constitution guarantees a defendant the right to effective assistance of counsel in a criminal prosecution.  *McMann v. Richardson*, 397 U.S. 759, 771 (1970).  In *Strickland*, the Supreme Court held that to establish ineffective assistance of counsel, a petitioner must show deficient performance and resulting prejudice. 466 U.S. at 687. Counsel renders ineffective assistance when his performance "[falls] below an objective standard of reasonableness," but there is a "strong presumption" that counsel's performance was professionally reasonable. *Id.* at 688-89. Prejudice requires a showing "that there is a reasonable

---

[2] The Fourth Circuit has stated that once a claim is determined to be procedurally barred, the court should not consider the issue on its merits. *Kornahrens v. Evatt*, 66 F.3d 1350 (4th Cir. 1995). Accordingly, the undersigned will not discuss the merits of Ground Three.

probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

      1.      Ground One-Failure to Object to Gang Membership References

Petitioner maintains he received ineffective assistance of counsel because his trial counsel failed object to references during his trial that he was a member of a gang. ECF No. 1 at 5. Petitioner argues that the gang references were "both objectionable and highly prejudicial" and "[b]ecause there was no objection to the information and it was essentially allowed to go to the jury unchallenged, [he] was denied his Sixth Amendment right to effective counsel." ECF No. 1-1 at 3.

Respondent maintains Ground One is without merit, and Petitioner cannot show that the PCR court made an unreasonable determination of the facts or unreasonably applied federal law in denying this claim. ECF No. 8 at 42. Additionally, Respondent argues that the PCR court found that trial counsel articulated a valid defense strategy regarding this issue, and where trial counsel articulates a valid reason for employing a certain strategy, such conduct should not be deemed ineffective assistance of counsel. *Id.* at 44-45. In Response, Petitioner argues "Respondent's argument on this ground primarily relies on the mistaken assertion [that] trial counsel's mistakes were actually valid strategic decisions." ECF No. 13 at 14. Rather, Petitioner maintains that trial counsel testified that he should have tried to keep the gang references out of evidence, and any evidence of gang activity was simply bad character evidence. *Id.* at 15. Further, Petitioner argues Respondent's argument—that gang testimony was both relevant and not more prejudicial than probative—is not supported by law. *Id.* In the remainder of his

Response, Petitioner maintains there was error and prejudice as a result of admission of the

evidence. *Id.* at 16-17.[3]

On this issue, the PCR court found:

> This Court finds the Applicant failed to meet his burden of proving trial counsel
> should have objected to references to a gang. At trial, the Applicant's brother said
> he told someone he was not in a gang but his brother was. (Trial transcript, p.51).
> Jamar Porcher stated someone in his group said – at the initial altercation – that
> someone in the group was "GKB, and that's the – that's the blond gang group."
> (Trial transcript, p.178). The Applicant testified he was not in a gang. The
> Applicant testified he was involved with Gpan but it was called Gpan
> Entertainment (and he identified a CD released by Gpan Entertainment). (Trial
> transcript, p.460; p.463). In the state's reply, Investigator Russell read George
> Mack's statement into evidence, which detailed the initial altercation and
> argument about "if [the Applicant's brother] was Gpan and if [another individual]
> was a blood." (Trial transcript, p. 490). In closing argument, the Solicitor
> mentioned the above-referenced testimony from the Applicant's brother. (Trial
> transcript, p.520). The Solicitor stated "[The Applicant] doesn't care about the
> law. Not him. He's Gpan." and references the Applicant's testimony that Gpan is
> a music group. (Trial transcript, p.524;p.532). This Court finds the limited
> reference to gang activity during the trial did not have any effect on the outcome
> of that trial and thus trial counsel was not deficient in not objecting or seeking a
> motion in limine. This Court notes there only one witness who testified the
> Applicant was in a gang. The other references were to general gang activity that
> occurred during the initial altercation – an altercation where the Applicant was not
> present. Further, trial counsel stated he made a strategic decision to combat this
> issue by arguing Gpan was not a gang and the Applicant was able to explain the
> nature of Gpan and even identified on re-direct a CD produced by that group. See
> Roseboro v. State, 317 S.C. 292, 294, 454 S.E.2d 312, 313 (1995) (finding where
> trial counsel articulates a valid reason for employing a certain strategy, such
> conduct should not be deemed ineffective assistance of counsel). This Court finds
> any references to gang activity did not prejudice the outcome of the trial. See
> Cherry v. State, 300 S.C. at 117-18, 386 S.E.2d at 625.

App. 777.

In addition to finding Petitioner's trial attorney did not err in failing to object to gang

references, the PCR court also determined that Petitioner was not prejudiced by the gang

references. Specifically, the PCR court found:

---

[3] Respondent's Reply does not address Grounds One and Two and focuses only on the
procedural bar argument in Ground Three.

> [T]he State presented overwhelming evidence of the Applicant's guilt. Four of the Applicant's co-defendants (including the Applicant's brother) testified at trial and all of them identified the Applicant as the shooter. (Trial transcript, pp.57-58; pp. 97-98; pp.125-26; pp.151-54). Three other individuals identified the shooter as someone who was not present at the initial altercation. (Trial transcript, pp.185-86; p.227; pp.263-64). Two more individuals testified the last person they saw holding the assault rifle before the shooting had not been present at the initial altercation. (Trial transcript p.250; pp.274-75). The Applicant (along with Alex Haigler and James Keitt) were the only members of that group that were not present at the initial altercation. As such, this Court finds that any minor errors made by trial counsel during the trial could not and did not affect the ultimate outcome of the case. See Franklin v. Catoe, 346 S.C. 563, 570 n. 3, 552 S.E.2d 718, 722 n. 3 (2001) (finding overwhelming evidence of guilt negated any claim that counsel's deficient performance could have reasonably affected the result of defendant's trial); Geter v. State, 305 S.C. 365, 367, 409 S.E.2d 344, 346 (1991) (concluding reasonable probability of a different result does not exist when there is overwhelming evidence of guilt); State v. McFadden, 318 S.C. 404, 416, 458 S.E.2d 61, 68 (Ct. App. 1995) (holding the solicitor's comments did not infect the trial with unfairness to the extent that his conviction was a denial of due process where there was ample evidence of guilt in the record).

App. 776.

During the PCR hearing, trial counsel testified that in preparation for the trial he received evidence that Petitioner was in a gang, but he did not want the jury to hear that Petitioner was a gang member. App. 706-07. Trial counsel testified that he did not think to file a motion in limine to limit any introduction of gang evidence. App. 707. When asked why he did not file such a motion, trial counsel testified: "I thought it was going to come out. We tried to attack it a different way by talking about the group he was in . . . that it wasn't a gang. But, yeah, I mean, if I could have kept it out and I didn't, then I guess that would be ineffective." App. 708. Trial counsel also agreed that he did not object at any point during the trial to the gang reference being admitted into evidence. *Id.* When asked whether there was evidence that the crime at issue was a "gang hit," trial counsel responded, "I wouldn't say as much as a gang, just guys from different areas, you know." App. 709. However, trial counsel agreed that the gang references amounted to bad-character evidence. *Id.*

During his line of questioning, PCR counsel indicated the instances during trial when the gang references were made, including the Solicitor's closing statement that included: "[Petitioner] doesn't care about the law, not him, he's G-Pan." App. 709-710. Trial counsel testified that he did not object to the gang references or the Solicitor's gang comment during closing and did not have a strategic reason for failing to object. App. 711. Trial counsel testified that Petitioner's defense would have been more successful or "beneficial" if testimony concerning gang membership had been eliminated. App. 725. Furthermore, trial counsel testified that objecting to evidence of Petitioner's gang membership "would have been more effective than our testimony that it wasn't a gang [that it was a music group]." App. 726.

On cross-examination, trial counsel testified again that during Petitioner's trial, he planned to attack gang references by bringing up the issue during the defense case because he "didn't think about being able to keep it out completely." App. 727. Additionally, trial counsel testified "[s]o we were going to talk about that it really wasn't a gang." *Id.* Trial counsel testified that during his questioning to Petitioner during the criminal trial, Petitioner explained that G-pan was not gang and "it was always his contention that it wasn't a gang." App. 727-28.

Petitioner argues that it was error for trial counsel to fail to object to evidence concerning gang activity. In support of this proposition, Petitioner cites *State v. Sobers*, 744 S.E.2d 588 (S.C. Ct. App. 2013). ECF No. 13 at 15. There, Sobers appealed the trial court's exclusion of gang evidence and gang activity at the scene of the shooting. *Id.* at 589. During the trial, the State sought to exclude the evidence because "gang activity was irrelevant and unfairly prejudicial." *Id.* However, the defense argued "the evidence went to self-defense." *Id.* at 589-590. The trial court in *Sobers* "left open the possibility that Sobers could offer gang evidence, if he could establish requisite relevancy." *Id.* at 590. So, the defense proffered expert testimony indicating

that "based on Facebook photographs, he believed the victim, as well as [others] were members of a gang [and] that based on his experiences in law enforcement, gangs will 'videotape their activities.'" *Id.* Ultimately the trial court ruled that evidence of gang activity was irrelevant to the issues in the case. *Id.* Specifically, the trial court found: "I fail to see the connection between any membership in a gang if there is one to what occurred on April the 21st 2009. I see no connection whatsoever." *Id.*

The *Sober* case stands for the proposition that a victim's *possible* gang membership may be irrelevant in a criminal murder case. Here, Petitioner is arguing such evidence is both irrelevant and was offered to prove his bad character. ECF No. 13 at 15. The undersigned finds that trial counsel did not err in failing to object to references to Petitioner's gang membership during his criminal trial based on possible irrelevancy and bad character evidence. However, even if trial counsel erred in failing to make necessary motions or objections concerning the evidence, the undersigned finds it to be harmless error. In other words, the undersigned finds that there is not a reasonable probability that, but for counsel's error, the result of Petitioner's criminal trial would have been different.

Here, there were four eye-witnesses identifying Petitioner as the shooter. App. 57-58; 97-98; 125-26; 151-54. The undersigned notes Petitioner's argument that these witnesses were Petitioner's co-defendants who "testified in exchange for significant reductions in their charges, from murder to accessory after the fact." ECF No. 13 at 16. Further, Petitioner argues: "[n]ot only did these men escape the murder chargers, but they were able to avoid any culpability for the killing whatsoever." *Id.* Nevertheless, these witnesses pointed blame away from themselves and all towards the same shooter—Petitioner—and not another individual present at the crime scene.  Therefore, these accounts are overwhelming evidence of Petitioner's guilt despite their

purported bargained-for testimony. Accordingly, the undersigned finds that Petitioner has failed to demonstrate that the PCR court erred in finding his trial counsel was effective under *Strickland*. Furthermore, the undersigned does not find that the PCR court's legal analysis under *Strickland* was objectively unreasonable. Here, Petitioner has failed to show that the state court's ruling was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington*, 562 U.S. at 103. Furthermore, the undersigned does not find that the state court unreasonably applied a governing legal principle or made an unreasonable determination of the facts in light of the evidence pursuant to § 2254(d)(1). As a result, the undersigned recommends granting Respondent Summary Judgment concerning Ground One and dismissing it as it is without merit.

2.    Ground Two-Failure to object to Solicitor acting as witness

Petitioner maintains he received ineffective assistance of counsel because his trial counsel failed to object the "Solicitor making himself a witness during cross-examination." ECF No. 1 at 7. Petitioner argues that on cross-examination of a State's witness, the Solicitor "asked a number of misleading questions related to his power as a prosecutor." ECF No. 1-1 at 3. Further, Petitioner represents that "[t]he Solicitor became a witness when he began making factual assertions regarding his power as a prosecutor, [and] [t]his was especially important in light of his suggestions that he had little power over the negotiation of criminal charges." *Id.* Additionally, Petitioner argues:

> [T]his information suggested and (sic) unbiased body made the ultimate decision to charge all of the co-defendants with accessory after the fact to murder, while [Petitioner] was charged with murder. It was never explained that the Solicitor's Office was responsible for all of the final charges of each co-defendant. The information was prejudicial and should not have been allowed to go to the jury unchallenged.

*Id.*

Respondent maintains Ground Two is without merit, and Petitioner fails to show that the PCR court made an unreasonable determination of the facts or unreasonably applied federal law in denying this claim. ECF No. 8 at 46. Additionally, Respondent argues that trial counsel testified that he wanted a sentencing sheet to be admitted at trial because it was part of his trial strategy to demonstrate that Petitioner's co-defendants all received plea deals. *Id.* at 47. Thus, Respondent argues the PCR Court did not err in finding Petitioner failed to meet his burden of proving trial counsel was deficient because it found trial counsel made a strategic decision to have sentencing sheets admitted into evidence. *Id.* at 49. Finally, Respondent argues that Petitioner failed to prove the prejudice prong of *Strickland*. *Id.* at 50.

In Response, Petitioner argues Respondent is incorrect in labeling Ground Two "nonsensical" because the "Solicitor [was] offering evidence [and] he was offering evidence that was misleading." ECF No. 13 at 17. Furthermore, Petitioner argues "[t]he problem was compounded because [the Solicitor] effectively told the jury he did not have any power over the grand jury and could only prosecute the cases on the charges that were returned by the grand jury." *Id.* at 18. Additionally, Petitioner argues that "[t]o suggest that the grand jury operates independently of the Solicitor's Office is simply untrue." *Id.* Petitioner argues that the Solicitor's statements had a devastating effect on his defense because he "was allowed to leave the jury with the impression the witnesses had not avoided the 30-year mandatory minimum for murder by cooperating, but because the grand jury had evaluated the facts and determined the cooperators were not culpable in the murder." *Id.* at 19.

During Petitioner's criminal trial, he called the Lexington County Clerk of Court, Joyce Hope Frick, as a witness. App. 467; 478-79. During her testimony, Petitioner introduced the indictment and sentencing sheet for George Mack, the driver of a burgundy car who did not

testify during Petitioner's trial. App. 480. The sentencing sheet indicated that Mack pleaded guilty to accessory after the fact and was sentenced to seven years imprisonment. App. 467; 480. Ms. Frick also testified: "[t]he other charges that were dismissed was a warrant for murder, warrant for assault with intent to kill, another count of assault with intent to kill, assault and battery with intent to kill, and criminal conspiracy." App. 481.

During cross-examination of Ms. Frick, the Solicitor had the following colloquy:

Q: Can I try somebody in this court based on a magistrate's warrant?
A: No, sir.
Q: Has to go to the Grand Jury?
A: Yes, sir. The Grand Jury has to act on it for trial.
Q: And this right here is what?
A: That's the indictment that is presented by law enforcement to the Grand Jury, and at least 12 of the 18 grand jurors have to vote to go forward.
Q: And did the Grand Jury vote on this indictment?
A: Yes, sir. They true billed it.
Q: And it was signature down here. Whose signature would that be on the - - on the indictment?
A: That is the Grand Jury's. That is the foreman of our Grand Jury.
. . . .
Q: And the Grand Jury indicted George Mack for accessory after the fact of murder, felony?
A: Yes, sir.
Q: And I can't try anybody unless the Grand Jury indicts them for a crime; can I?
A: Correct. It has to be true billed by the Grand Jury--
Q: And the Grand Jury never issued a murder indictment for George Mack; did they?
A: No, sir.
Q: Now, on the second page, that sentencing sheet.
A: Yes, sir.
Q: That's got up there that George Mack pled guilty as indicted by the Grand Jury; didn't he?
A: Yes, sir.
Q: And it's got on there the State didn't make any negotiations or recommendations.
A: That is correct.
Q: It was solely up to the Judge whether to give him zero to fifteen years.
A: Yes, sir.
Q: So the State didn't make any promises to George Mack.
A: Not that - - nothing negotiated on here.
Q: And this is signed by the Judge.

A: Yes, Sir.
Q: So, we didn't have anything to do with the sentencing.
A: No, sir.
Q: The Judge did.
A: No, sir.
Q: And George Mack went to prison.
A: Yes, sir, for seven years.

App. 482-84.

During the PCR hearing, trial counsel testified that he did not object to the above line of questioning on the grounds that Solicitor Myers was making himself a witness and did not move for a mistrial or try to disqualify him from making further testimony or from prosecuting the case. App. 722. When specifically asked whether he believed that Solicitor Myers had made himself a witness during cross-examination, trial counsel agreed and stated "it's more apparent looking at it, but yes." *Id.* Trial counsel testified that though Solicitor Myers had signed George Mack's sentencing sheet, he did not consider making an objection based on the Solicitor's introduction of himself as a witness because he was the one who had negotiated that plea with Mr. Mack. App. 723. Trial counsel agreed that he should have objected when Solicitor Myers stated that he could not do anything about the indictments. App. 723-724.

On cross-examination, the State asked trial counsel whether he thought Solicitor Myers' questioning affected the outcome of the trial. App. 729. Trial counsel responded:

> [T]hat's hard to say. If the jury believed the questioning, I think they were certainly given the wrong impression of the power of the Solicitor's office and the process, and they may have been given the wrong impression that it was some type of independent, unbiased decision that these other people were not charged with the shooting because they would have been, in any event, you know, even though they didn't pull the trigger. So yes, it -- I can't say it did affect it, but it may have.

*Id.*

Turning to the PCR Order of Dismissal, the undersigned finds the PCR court adequately summarized trial counsel's testimony on the issue. When addressing the merits of this issue, the PCR court found:

> Trial counsel testified he did not object when the Solicitor asked the Clerk of Court – Hope Frick – about Mack's sentencing sheets and guilty plea. Trial counsel testified he also did not move for a mistrial. Trial counsel admitted, however, that he wanted Mack's sentencing sheet to be admitted at trial because it was part of his trial strategy to demonstrate that the Applicant's co-defendants all received plea deals. Trial counsel further admitted that not moving for a mistrial likely did not change the outcome of the trial.

> This Court finds the Applicant failed to meet his burden of proving trial counsel should have objected or moved for a mistrial during the Solicitor's direct examination of Hope Frick. As discussed supra, it was determined by the parties that Mack's sentencing sheets would be entered into evidence. (Trial transcript, pp.468-77). Trial counsel called Hope Frick, the supervisor of the criminal division in the Lexington County Clerk of Court's office, to authenticate Mack's sentencing sheet, and note he received a seven-year sentence for a guilty plea to accessory after the fact and that several warrants that had been dismissed. (Trial transcript, pp.478-81). On cross-examination, the Solicitor asked Frick several questions about the indictment process. (Trial transcript pp.481-83). The Solicitor asked "I can't try anybody unless the Grand Jury indicts them for a crime; can I?" and Frick said "[c]orrect." The Solicitor then asked if Mack was ever indicted for murder and Frick said he had not. (Trial transcript, pp.483-84). Pursuant to the Solicitor's questions about Mack's sentencing sheet, Frick also stated he had been indicted for accessory after the fact and the State had not made recommendations or negotiations. (Trial transcript, p.484). The Solicitor then asked "[s]o we didn't have anything to do with the sentencing" and Frick said no. (Trial transcript, p.484).

> Contrary to the Applicant's assertion, this Court does not find the Solicitor effectively made himself a witness during Frick's cross-examination. Rather, as noted supra in Section C of this order, it is clear the parties agreed to have both Mack's sentencing sheet introduced into evidence. Trial counsel stated at the time this was part of his defense strategy. (Trial transcript, p.469; p.471). Again, this Court finds this was a valid strategy. See Roseboro v. State 317 S.C. at 294, 454 S.E.2d at 313. In any event, this Court finds the Solicitor's comments were not made from a personal angle. Instead the Solicitor was merely asking if the Solicitor's Office – as a whole – do such things as pursue cases without an indictment or have impact on sentencing in a case without a negotiation or recommendation. As the Solicitor did not make himself a witness in this case, this Court finds the Applicant's reliance on State v. Sierra, 337 S.C. 368, 523 S.E. 2d 187 (Ct. App. 1999) is misplaced. Further, trial counsel was not deficient in not

37

moving for a mistrial during Frick's testimony. Based on the overwhelming evidence of the Applicant's guilt, trial counsel would not have been able to demonstrate any prejudice. See State v. Harris, 340 S.C. at 63, 530 S.E.2d at 628.

This undersigned finds the Petitioner failed to meet his burden of proving trial counsel should have objected or moved for a mistrial during the Solicitor's direct examination of Hope Frick. By calling Mrs. Frick as a witness, it was trial counsel's intent to demonstrate George Mack's motivation in entering his guilty plea—that Mack got a reduced sentence and the murder charge was dropped. Though Solicitor Myers' line of questioning may not have been a typical cross-examination, the undersigned finds that trial counsel's failure to act in response to it did not amount to trial error. However, even if error occurred, the undersigned does not find the outcome of Petitioner's criminal trial was affected. Therefore, the PCR court's dismissal of Petitioner's claim of ineffective assistance of counsel was not an unreasonable application of federal law because Petitioner failed to show that there is a reasonable probability that the result of his trial would have been different had trial counsel objected during the testimony or made a motion in response to it. Accordingly, the undersigned finds that Petitioner has failed to demonstrate that the state court's decision was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. See 28 U.S.C. § 2254(d) & (e)(1). As a result, the undersigned finds that Ground Two is without merit and should be dismissed.

IV.     Conclusion and Recommendation

Wherefore, based upon the foregoing, the undersigned recommends that Respondent's Motion for Summary Judgment, ECF No. 9, be GRANTED and the Petition be DENIED.

IT IS SO RECOMMENDED.


December 15, 2015                              Kaymani D. West
Florence, South Carolina                       United States Magistrate Judge


**The parties are directed to note the important information in the attached
"Notice of Right to File Objections to Report and Recommendation."**